**OXFORD MINING COMPANY, INC., Appellant,**

v.

**SPONSLER, Chief, Division of Mineral Resource Management, Appellee.**

[Cite as *Oxford Mining Co., Inc. v. Sponsler,* 156 Ohio App.3d 557, 2004-Ohio-1547.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 03–BE–36.

Decided March 26, 2004.

Dean K. Hunt, for appellant.

Jim Petro, Attorney General, and Mark G. Bonaventura, Assistant Attorney General, Environmental Enforcement Section, for appellee.

GENE DONOFRIO, Judge.

{¶ 1} Appellant, Oxford Mining Company, Inc., appeals from a Reclamation Commission order affirming the issuance of a notice of violation issued by appellee, the Ohio Department of Natural Resources, Division of Mineral Resources Management.

{¶ 2} On November 15, 2002, appellee issued Notice of Violation 24362 ("NOV") to appellant, stating that "accumulated water is in contact with toxic material, in a pit within the watershed of impoundment number 10–B." The NOV instructed appellant to remove the accumulated water from contact with toxic materials and to act appropriately to prevent additional contact from occurring. Appellant filed

a notice of appeal from the NOV with the Reclamation Commission ("commission") and requested an evidentiary hearing.

{¶ 3} The commission held a hearing on February 6, 2003, where it heard testimony from John Puterbaugh, the Division of Mineral Resource Management inspector who had issued the NOV, and Jeffrey Yoho, who works as a supervisor for appellant. It then filed findings, conclusions, and orders on May 22, 2003. The commission affirmed the issuance of the NOV. It concluded that on the date of the issuance of the NOV, water in a pit on permit D–2122 (appellant's mining permit) had come in contact with toxic materials and that appellant allowed the acid water that resulted to accumulate in the pit. From this decision, appellant filed a timely notice of appeal on June 23, 2003.

{¶ 4} The standard of review of an appeal from an order of the Reclamation Commission is limited. *Pleasant City v. Ohio Dept. of Natural Resources, Div. of Reclamation* (1993), 67 Ohio St.3d 312, 316, 617 N.E.2d 1103. R.C. 1513.14 governs appeals from the commission. This court must affirm the commission's decision unless we determine that it is arbitrary, capricious, or otherwise inconsistent with law. R.C. 1513.14(A).

{¶ 5} Although appellant does not set out assignments of error, it breaks its argument into three assertions, the first of which states:

{¶ 6} "Appellee failed to prove that pit water was in contact with toxic material."

{¶ 7} Appellant alleges that appellee was required to present evidence that the water in the pit came in contact with a "toxic forming material" meeting the definition of Ohio Adm.Code 1501:13–1–02(HHHHHH). It claims that appellee did not present such evidence. Appellant contends that appellee relied wholly upon the pH measurement of the water in the pit. However, it argues that simply because the pit water had a pH of 4.5, this does not establish the existence of toxic-forming materials within the definition of Ohio Adm.Code 1501:13–1–02(HHHHHH). Appellant asserts that in order for the pit water to be in contact with toxic-forming materials, appellee had to first prove that toxic-forming materials existed in the pit.

{¶ 8} Ohio Adm.Code 1501:13–9–04(J) provides that drainage from both acid-forming and toxic-forming material into ground and surface waters should be avoided. Ohio Adm.Code 1501:13–9–04(J)(2) requires the prevention of water coming in contact with acid-forming and toxic-forming materials. "Acid-forming materials" are "earth materials that contain sulfide mineral or other materials which, if exposed to air, water, or weathering processes, will form acids that may create acid drainage." Ohio Adm.Code 1501:13–1–02(C). "Toxic-forming materials" are "earth materials or wastes having a pH of less than 4.0 or a calcium

carbonate deficiency of five tons or more per one thousand tons of material. By order of the chief, such other earth materials or wastes shall be designated toxic which, if acted upon by air, water, weathering, or microbiological processes, are likely to produce chemical or physical conditions in soils or water that are detrimental to biota or uses of water." Ohio Adm.Code 1501:13–1–02(HHHHHH).

{¶ 9} Appellee produced sufficient evidence that the pit water came in contact with toxic-forming and/or acid-forming materials. Puterbaugh testified that the pit water had a pH of 4.5, which told him the water was acidic.[1] He also testified that he obtained the drilling reports for the area, which revealed that the coal and shale in the pit were both acidic. Appellee also introduced photographs that Puterbaugh had taken of the pit water. The photos revealed that the water was yellowish-green, which Puterbaugh testified was indicative of acidic water. Additionally, Puterbaugh testified that the pit water came in contact with toxins that produced acid water, meaning the coal and shale. Based on this evidence, the commission's decision was not arbitrary, capricious, or inconsistent with law.

■ {¶ 10} Additionally, appellant asserts that appellee relied on the definitions of "acid-forming materials" and "acid water" to support its case. These definitions provide:

{¶ 11} "(C) 'Acid-forming materials' means earth materials that contain sulfide mineral or other materials which, if exposed to air, water, or weathering processes, will form acids that may create acid drainage.

{¶ 12} "(D) 'Acid water' means any waters, the pH of which, as determined by standard methods, is less than 6.0." Ohio Adm.Code 1501:13–1–02(C), (D).

{¶ 13} Appellant argues that these sections were not mentioned in the NOV. Therefore, it contends that it did not have notice, as required by administrative due process, of this violation and was not prepared to defend against this allegation.

{¶ 14} R.C. 1513.02(D)(4) sets out the requirements for a notice of violation, stating, "Notices of violation and orders issued pursuant to this section shall set forth with reasonable specificity the nature of the violation and the remedial action required, the period of time established for abatement, and a reasonable description of the portion of the coal mining and reclamation operation to which the notice or order applies."

{¶ 15} The NOV described appellant's violation as "accumulated water is in contact with toxic material, in a pit within the watershed of impoundment number

---

1. A pH of 7 is neutral. Anything within the pH range of 6 to 9 would not result in a violation according to Puterbaugh.

10–B." It also listed R.C. 1513.16(A)(10)(a)(i) and Ohio Adm.Code 1501:13–9–04(J)(2) as the applicable statute and rule. This description sets forth appellant's violation with reasonable specificity. It puts appellant on notice that it cannot accumulate water in the pit with toxic materials. It also provides specific sections of the Revised Code and Administrative Code that apply. While the commission may have looked to other related sections in determining whether to affirm the NOV, appellant was well aware of the condition on the mine site for which the NOV was issued—water in a pit coming in contact with toxic material. There is no requirement in R.C. 1513.02(D)(4) that the NOV list every applicable statutory section or regulation that might apply. In a similar case, an appellant-mining company claimed its notices of violation, in order to meet the specificity requirement of R.C. 1513.02(D)(4), should have cited the exact statutes or rules violated. The Fourth District disagreed stating, "We note the statute [R.C. 1513.02(D)(4)] does not require the notices of violation to state the exact statutes or rules violated. The statute only requires the notices of violation to state with 'reasonable specificity' the nature of the violation and the remedial action required." *Raven–Hocking Coal Corp. v. Mamone* (June 11, 1986), 4th Dist. No. 419, 1986 WL 6519. Thus, the NOV gave appellant adequate notice of its violation. Accordingly, appellant's first assertion is without merit.

{¶ 16} Appellant's second assertion states:

{¶ 17} "Appellee failed to prove a violation of OAC 1501:13–9–04(J)(2)."

{¶ 18} Assuming, arguendo, that appellee proved the existence of toxic-forming materials, appellant contends that appellee did not prove that it failed to prevent water from coming in contact with the toxic-forming materials in accordance with Ohio Adm.Code 1501:13–9–14(J).[2] Appellant asserts that merely because water came in contact with toxic-forming materials does not necessarily mean that a violation existed. It claims that this would be impossible to prevent because it would require that rain never fell. Appellant argues that appellee was required to, and failed to, present any evidence that appellant did not operate in accordance with Ohio Adm.Code 1501:13–9–04(J). Instead, appellant points to Puterbaugh's testimony that he did not find appellant's operation to be in violation of Ohio Adm.Code 1501:13–9–14(J). Appellant states that the NOV cited it in violation of Ohio Adm.Code 1501:13–9–04 and appellee failed to prove such a violation. It asserts that the commission acted arbitrarily and capriciously because it relied upon Ohio Adm.Code 1501:13–9–14(J)(2), which provides:

---

**2.** Ohio Adm.Code 1501:13–9–14(J) is the regulatory provision that provides specific measures for mine operators to take to prevent water from coming into contact with acid-forming and toxic-forming materials to comply with Ohio Adm.Code 1501:13–9–04(J)(2).

{¶ 19} "Stabilization. Backfilled materials shall be selectively placed and compacted wherever necessary to prevent leaching of acid- or toxic-forming materials into surface or subsurface waters in accordance with rule 1501:13–9–04 of the Administrative Code and wherever necessary to ensure the stability of the backfilled materials. The method of compacting material and the design specifications shall be approved by the chief before the acid- or toxic-forming materials are covered."

{¶ 20} Appellant contends that not only was it not cited for failure to properly backfill or stabilize materials, but also, appellee presented no evidence regarding backfilling or stabilizing at the mine site.

{¶ 21} Ohio Adm.Code 1501:13–9–04(J)(2) provides:

{¶ 22} "(J) Acid-forming and toxic-forming spoil. Drainage from acid-forming and toxic-forming mine waste materials and soils into ground and surface water shall be avoided by:

{¶ 23} " * * *

{¶ 24} "(2) Preventing water from coming into contact with acid-forming and toxic-forming materials in accordance with paragraph (J) of rule 1501:13–9–14 of the Administrative Code, and other measures as required by the chief."

{¶ 25} Ohio Adm.Code 1501:13–9–14(J) provides methods for covering or otherwise treating coal and acid-forming, toxic-forming, combustible, and other waste materials, stabilizing backfilled materials, and using waste material for fill. While the commission did cite Ohio Adm.Code 1501:13–9–14(J)(2) in its decision, it was one of several sections the commission noted in reaching its ultimate conclusion that appellant had allowed the pit water to come in contact with toxic materials resulting in the accumulation of acid water and, therefore, the NOV was properly issued.

{¶ 26} The commission first pointed out that R.C. 1513.02(A) sets forth certain duties of the Division of Mineral Resources Management, including:

{¶ 27} "To implement the requirements of this chapter for the reclamation of lands affected by coal mining, * * * to prevent pollution or substantial diminution of waters of the state, * * * *accumulation* and discharge of acid water, and flooding, both during mining and reclamation and thereafter; and to ensure full compliance with all requirements of this chapter relating to reclamation, and the attainment of those objectives in the interest of the public health, safety, and welfare to which these reclamation requirements are directed." (Emphasis added.)

{¶ 28} It then cited R.C. 1513.16(A)(10)(a), which requires a mine operator to minimize disturbances to the hydrological balance and the quality of the ground

and surface waters by, among other things, preventing or removing water from contact with toxic producing deposits. Next, it cited Ohio Adm.Code 1501:13–9–04(J) and then Ohio Adm.Code 1501:13–9–14(J). Finally, the commission noted the definitions of "acid-forming materials" and "acid water" set out in Ohio Adm.Code 1501:13–1–02(C), (D). Thus, the commission did not solely rely on Ohio Adm.Code 1501:13–9–14(J)(2), as appellant suggests.

{¶ 29} Furthermore, the commission found that the acid water was in the pit for at least four days and for as many as 40 days. The commission noted, in some instances, that it would be impossible to prevent water from coming in contact with toxic materials because "rain certainly will fall on a permit area." But it went on to explain that when contact with toxins cannot be prevented, the operator must remove the water from such contact. The commission concluded that appellant had not removed the water from the pit in a reasonable amount of time. Thus, the commission did not expect that appellant prevent rain from falling, as appellant argued above.

{¶ 30} Finally, Yoho testified that it was appellant's position that it could leave acid water in the pit for extended periods of time. This testimony further demonstrated that appellant was in violation of the above-referenced statutes and regulations, as appellant did not think there was a need to prevent the accumulation of acid water.

{¶ 31} Accordingly, appellant's second assertion is without merit.

{¶ 32} Appellant's third assertion states:

{¶ 33} "Appellee failed to prove a violation of ORC 1513.16(A)(10)(a)(i)."

{¶ 34} Appellant contends that both Puterbaugh and Yoho testified that it was removing water from contact with toxic-forming materials by pumping the water from the pit and treating it before releasing the water from the mine site. Appellant contends that this testimony shows its compliance with R.C. 1513.16(A)(10)(a)(i). R.C. 1513.16(A)(10)(a)(i) provides:

{¶ 35} "(A) * * * General performance standards shall apply to all coal mining and reclamation operations and shall require the operator at a minimum to do all of the following:

{¶ 36} " * * *

{¶ 37} "(10) Minimize the disturbances to the prevailing hydrologic balance at the mine site and in associated offsite areas and to the quality and quantity of water in surface and ground water systems both during and after coal mining operations and during reclamation by doing all of the following:

{¶ 38} "(a) Avoiding acid or other toxic mine drainage by such measures as, but not limited to:

{¶ 39} "(i) Preventing or removing water from contact with toxic producing deposits."

{¶ 40} In an effort to demonstrate its compliance, appellant points our attention to the federal Surface Mining Control and Reclamation Act ("SMCRA"), after which Ohio mining law is patterned. It calls our attention to the House report accompanying SMCRA, wherein it was noted that total prevention of adverse effects on water from mining is impossible and that the goal of the legislation should be to allow the mining to continue and give the miners alternatives to minimize the impact associated with toxic drainage and avoid water pollution. Appellant also discusses the effluent limitations and permitting program under the federal and Ohio Clean Water Acts. It asserts that under the effluent limitations, while the discharge of water with a pH of 6 or less may be a violation, the mere existence of a water pit with a pH below 6 is not itself a violation.

{¶ 41} Appellant further contends that its mining permit allowed it to collect water in mine pits to control drainage. It asserts that Puterbaugh issued the NOV based on his opinion that any time water on a mine site had a pH under 6, a violation existed because the water did not comply with effluent limitations. This belief, appellant argues, is incorrect.

{¶ 42} The fact that appellant pumped and treated the acid water should not absolve it from the violation in the first place. If appellant did not comply with the NOV, it would have subjected itself to civil penalties under R.C. 1513.02(E). Thus, it was in appellant's best interests to promptly comply with the remedial section of the NOV.

{¶ 43} Furthermore, the evidence at the commission's hearing supports its finding that appellant violated R.C. 1513.16(A)(10)(a)(i). The evidence demonstrated that appellant did not prevent the pit water from coming in contact with toxic-producing deposits nor did it remove the water from the pit once it came in contact with the acid-forming materials. Appellant's own supervisor testified that appellant believed that it was permissible to let acid water accumulate in a pit for an extended period of time. This testimony coupled with Puterbaugh's testimony cited above supports the commission's decision. Thus, we cannot conclude that the commission acted arbitrarily, capriciously, or inconsistently with law in rendering its decision. Accordingly, appellant's third assertion is without merit.

{¶ 44} For the reasons stated above, the commission's decision is hereby affirmed.

Decision affirmed.

VUKOVICH and DEGENARO, JJ., concur.